IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

|  |  |
|---|---|
| GTX CORPORATION, a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>KOFAX IMAGE PRODUCTS, INC., a. Delaware corporation, PEGASUS IMAGING CORPORATION, a Delaware corporation, NUANCE COMMUNICATIONS, INC., a Delaware corporation, LEAD TECHNOLOGIES, INC., a North Carolina Corporation, EASTMAN KODAK COMPANY, a New Jersey corporation, XEROX CORPORATION, a New York corporation, and CANON U.S.A., INC., a New York corporation,<br>Defendants. | CIVIL ACTION NO. 6:06-cv-244<br><br>**DEMAND FOR JURY TRIAL** |

**DEFENDANT NUANCE COMMUNICATIONS, INC.'S**
**SECOND AMENDED COUNTERCLAIMS**

Pursuant to Fed. R. Civ. P. 15(a), and with the consent of Plaintiff GTX Corporation, by its counsel, Counterclaim-Plaintiff Nuance Communications, Inc. ("Nuance") asserts the following amended counterclaims against Counterclaim-Defendant GTX Corporation ("GTX") and demands a trial by jury on all issues so triable. Nuance alleges as follows:

**THE PARTIES**

1.  Nuance is a corporation incorporated under the laws of Delaware with its corporate headquarters at 1 Wayside Road, Burlington, Massachusetts 01803.

2.  Upon information and belief, GTX is a corporation incorporated under the laws of Delaware with its principal place of business at 15333 North Pima Road, Suite 116, Scottsdale, Arizona 85260.

## JURISDICTION AND VENUE

3. This is an action for declaratory relief. This Court has subject matter jurisdiction over the following counterclaims based on 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

4. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400.

## FIRST COUNTERCLAIM

### (Declaratory Judgment of Noninfringement)

5. Nuance incorporates and realleges paragraphs 1 through 4 above.

6. GTX alleges that it is the owner of United States Patent No. 7,016,536 ("the '536 Patent"), and GTX has brought suit against Nuance for infringement of the '536 Patent.

7. The '536 Patent is not infringed by any products made, used, sold, offered for sale or imported by Nuance.

8. An actual case or controversy exists between Nuance and GTX based on GTX having filed a Complaint against Nuance alleging infringement of the '536 Patent.

9. Declaratory relief is both appropriate and necessary to establish that the '536 Patent is not infringed by any products made, used, sold, offered for sale or imported by Nuance.

10. Nuance is entitled to a declaratory judgment that Nuance does not infringe the '536 Patent.

## SECOND COUNTERCLAIM

### (Declaratory Judgment of Invalidity)

11. Nuance incorporates and realleges paragraphs 1 through 10 above.

12. On information and belief, the '536 Patent is invalid for failure to meet one or more of the statutory requirements for patentability set forth in 35 U.S.C. §§ 101 et seq.

13. An actual case or controversy exists between Nuance and GTX based on GTX having filed a Complaint against Nuance alleging infringement of the '536 Patent.

14. Declaratory relief is both appropriate and necessary to establish that the '536 Patent is invalid.

15. Nuance is entitled to a declaratory judgment that the '536 Patent is invalid.

## THIRD COUNTERCLAIM

### (Declaratory Judgment of Unenforceability)

16. Nuance incorporates and realleges paragraphs 1 through 15 above.

17. The '536 patent is unenforceable because it was procured from the United States Patent and Trademark Office ("USPTO") through inequitable conduct by GTX, its agents involved in prosecuting the '536 patent, and the inventors named on the '536 patent, in violation of 37 C.F.R. § 1.56 and United States Patent Law.

18. On information and belief, during prosecution of U.S. Provisional Application No. 60/167,330, U.S. Provisional Application No. 60/177,820 and U.S. Patent Application No. 09/717,606 (collectively the "'536 Patent Applications"), which collectively led to the issuance of the '536 patent, Andrew M. Ling, inventor Marvin T. Ling's son, was GTX's Vice President and General Counsel, was responsible for all legal matters affecting GTX, and was aware of and involved in the prosecution of the '536 Patent Applications.

19. During prosecution of the '536 Patent Applications, GTX, its agents involved in prosecuting the '536 patent, including Andrew M. Ling, and the inventors named on the '536 patent (individually and collectively "applicants") owed a duty of candor and good faith in dealing with the USPTO, which included a duty to disclose to the USPTO all information material to patentability.

20.     On information and belief, during prosecution of the '536 Patent Applications, the applicants knew of, but failed to cite, several material prior art references with the intent to deceive the USPTO.

21.     Between November 26, 1996 and July 7, 1998, the USPTO issued U.S. Patents Nos. 5,579,414; 5,590,224; 5,594,814; 5,594,815; 5,594,817; 5,625,719; 5,729,635; and 5,778,103, which were assigned to TMSSequoia or TMS, Inc. (which did business as TMSSequoia and is referred to herein as "TMSSequoia") (the "TMSSequoia Patents").  Among other things, each of the eight TMSSequoia patents discloses methods and systems for deskewing, despeckling and removing noise from scanned documents.

22.     TMSSequoia offered a product it called "ScanFix" ("ScanFix") for sale to the general public in the United States before the earliest filing or priority date of the '536 Patent Applications.

23.     Prior to the earliest filing or priority date of the '536 Patent Applications, the applicants, including at least Marvin T. Ling, Alan J. Filipski, Michael E. Higgins, and Andrew M. Ling, were aware of ScanFix and the TMSSequoia patents.

24.     Prior to the filing of U.S. Patent Application No. 09/717,606, one or more of the applicants, including at least Marvin T. Ling, had read more than one of the TMSSequoia Patents.

25.     Upon information and belief, prior to the filing of U.S. Patent Application No. 09/717,606, one or more of the applicants, including at least Marvin T. Ling, believed that the TMSSequoia patents included claims covering some of the features in ScanFix, including features for preprocessing images for optical character recognition.

26. Prior to and during the prosecution of the '536 Patent Applications, one or more of the applicants compared ScanFix to GTX's GTXScanClean product, and considered the products to be competitive products.

27. Prior to the filing of U.S. Patent Application No. 09/717,606, some of the applicants discussed characteristics shared by one or both of GTX's pending U.S. Provisional Application Nos. 60/167,330 and 60/177,820, and ScanFix.

28. ScanFix and the TMSSequoia patents are material prior art to the subject matter claimed in the '536 patent. The applicants were aware of ScanFix and the TMSSequoia Patents prior to and during prosecution of the '536 Patent Applications and intentionally misled the USPTO by withholding this material prior art from the USPTO with the intent to deceive the USPTO in violation of 37 C.F.R. § 1.56.

29. No later than December 1999, during prosecution of the '536 Patent Applications, applicants, including at least Marvin T. Ling and Andrew M. Ling were aware of Caere Corporation's OmniPage product ("OmniPage"), Xerox Corporation's TextBridge product ("TextBridge") and defendant Kofax Image Products, Inc.'s Virtual Re-Scan product ("Virtual Re-Scan"). Upon information and belief, the applicants knew that OmniPage, TextBridge and Virtual ReScan had been on sale in the United States for more than one year before the '536 Patent Applications were filed.

30. In December 1999, applicants knew that OmniPage, TextBridge and Virtual Re-Scan contained image processing technology for cleaning up images to prepare them for optical character recognition. The image processing technology contained in OmniPage and Virtual Re-Scan, about which applicants knew in December 1999, forms part of the basis for GTX's allegations that OmniPage and Virtual Re-Scan infringe the '536 patent.

31. The OmniPage, TextBridge and Virtual Re-Scan products are material prior art to the subject matter claimed in the '536 patent. The applicants intentionally misled the USPTO by withholding this material prior art from the USPTO with the intent to deceive the USPTO in violation of 37 C.F.R. § 1.56.

32. Not later than September 1998, GTX had offered for sale software, such as its GTXRaster CAD® Series V5.0, that is material prior art to the subject matter claimed in the '536 patent. The applicants were aware of this prior art and, upon information and belief, withheld this material prior art from the USPTO with the intent to deceive the USPTO in violation of 37 C.F.R. §1.56.

33. Alan J. Filipski, one of the named inventors on the '536 patent, authored "Recognition of Hand-lettered Characters in the GTX 5000 Drawing Processor," IEEE, 1989, pgs. 686-691 and "Automated Conversion of Engineering Drawings to CAD Form," Proceedings of the IEEE, Vol. 80, No. 7, July 1992, pgs. 1195-1209, both of which constitute material prior art to the subject matter claimed in the '536 patent. Mr. Filipski intentionally misled the USPTO by withholding this material prior art from the USPTO with the intent to deceive the USPTO in violation of 37 C.F.R. §1.56.

34. Upon information and belief, the applicants had knowledge of the contents of Proceedings of the IEEE, Vol. 80, No. 7, July 1992 ("July 1992 IEEE Journal"), in which Mr. Filipski's article entitled "Automated Conversion of Engineering Drawings to CAD Form" was published. The contents of the July 1992 IEEE Journal, and in particular those items identified in Defendants' Preliminary Invalidity Contentions, are material prior art to the subject matter claimed in the '536 patent and, upon information and belief, were withheld by the applicants with the intent to deceive the USPTO in violation of 37 C.F.R. §1.56.

35.     On or about January 23, 2001, the applicants filed an Information Disclosure Citation with the USPTO in connection with the application that matured into the '536 patent. Among other references, United States Patent No. 5,664,027, issued to David Jack Ittner and entitled "METHODS AND APPARATUS FOR INFERRING ORIENTATION OF LINES OF TEXT," (the "Ittner Patent") was listed on the Information Disclosure Citation.

36.     European Patent Application No. 91306301.2, entitled "DETECTING SKEW IN DIGITISED IMAGES," (the "European Patent Application") is cited on the face of the Ittner Patent. Among other things, the European Patent Application discloses determining the amount of skew or misalignment of a document. The European Patent Application was published on May 13, 1992 and is prior art to the '536 patent under 35 U.S.C. § 102.

37.     United States Patent No. 5,001,766, issued to Henry S. Baird and entitled "APPARATUS AND METHOD FOR SKEW CONTROL OF DOCUMENT IMAGES," (the "Baird Patent") is discussed in the Background section of the Ittner Patent. Among other things, the Baird Patent discloses a method for determining the skew angle of a digital image of a document. The Baird Patent issued on March 19, 1991, and is prior art to the '536 patent under 35 U.S.C. § 102.

38.     An article entitled "The Skew Angle of Printed Documents" by Henry S. Baird (the "Baird Article") is cited on the face of the Ittner Patent. Among other things, the Baird Article discloses a method for determining the skew angle of a digital image of a document. The Baird Article was published in the Advanced Printing of Symposium Summaries for the SPSE's 40th Annual Conference and Symposium on Hybrid Imaging Systems, held in Rochester, New York on May 20-21, 1987, and is prior art to the '536 patent under 35 U.S.C. § 102.

39. An article entitled "The Document Spectrum for Page Layout Analysis" by Lawrence O'Gorman (the "O'Gorman Article") is cited on the face of the Ittner Patent. Among other things, the O'Gorman Article summarizes a number of skew estimation techniques, and discloses a method for structural page layout analysis that yields an accurate measure of skew. A previous version of the O'Gorman Article is also discussed in the Background section of the Ittner Patent. The O'Gorman Article was published in the November 1993 edition of <u>IEEE Transactions on Pattern Analysis and Machine Intelligence</u>, and is prior art to the '536 patent under 35 U.S.C. § 102.

40. The European Patent Application, Baird Patent, Baird Article, and O'Gorman Article are material prior art to the subject matter claimed in the '536 patent. The applicants knew of this material prior art during prosecution of the '536 patent and intentionally misled the USPTO by withholding this material prior art from the USPTO with the intent to deceive the USPTO in violation of 37 C.F.R. § 1.56.

41. On or about March 1, 2001, the International Searching Authority mailed the International Search Report for PCT Application No. PCT/US00/31981 to the applicants. Among other references, United States Patent No. 5,956,422, issued to Hassan Alam and entitled "PROCESSOR BASED METHOD FOR EXTRACTING TABLETS FROM PRINTED DOCUMENTS," (the "Alam Patent") was listed on the International Search Report. The Alam Patent issued on September 21, 1999, and is prior art to the '536 patent under 35 U.S.C. § 102.

42. Both the '536 patent and PCT Application No. PCT/US00/31981 claim priority to United States Provisional Patent Application Nos. 60/167,330 and 60/177,820, and PCT Application No. PCT/US00/31981 is an international application that is a counterpart to the '536 patent.

43. Among other things, the Alam Patent discloses processing steps for locating tabular data in pixel-format document images, including a step for determining a skew angle of the document image.

44. The Alam Patent incorporates by reference the article entitled "Analysis of Textual Images Using the Hough Transform" by Srihari et al. (the "Srihari Article") and states that the method described in the Srihari Article permits determining a skew angle for a pixel-format document image.

45. The Srihari Article was published in a 1989 edition of <u>Machine Vision and Applications</u>, and is prior art to the '536 patent under 35 U.S.C. § 102. Among other things, the Srihari Article discloses employing the Hough transform to determine straight lines of text and to determine the text skew angle.

46. The Alam Patent and Srihari Article are material prior art to the subject matter claimed in the '536 patent. The applicants knew of this material prior art during prosecution of the '536 patent and intentionally misled the USPTO by withholding this material prior art from the USPTO with the intent to deceive the USPTO in violation of 37 C.F.R. § 1.56.

47. On information and belief, the '536 patent is unenforceable for inequitable conduct, in violation of 37 C.F.R. § 1.56 and United States Patent Law, during the prosecution of the applications that matured into the '536 patent.

48. An actual case or controversy exists between Nuance and GTX based on GTX having filed a Complaint against Nuance alleging infringement of the '536 patent.

49. Declaratory relief is both appropriate and necessary to establish that the '536 patent is unenforceable.

50. Nuance is entitled to a declaratory judgment that the '536 Patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Nuance denies that GTX is entitled to any of the relief requested in its Complaint and requests that this Court:

1. Dismiss GTX's Complaint with prejudice;

2. Deny all relief requested by GTX;

3. Enter judgment declaring that Nuance has not infringed, contributed to the infringement of, or induced the infringement of any valid claim of the '536 Patent;

4. Enter judgment declaring the '536 Patent invalid;

5. Enter judgment declaring the '536 Patent unenforceable;

6. Find that this case is exceptional pursuant to 35 U.S.C. § 285 and award Nuance its attorneys' fees, expenses and costs incurred in connection with this action; and

7. Grant such further relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Nuance hereby demands a trial by jury on all issues so triable.

| | |
|---|---|
| February 9, 2007 | Respectfully submitted, |

/s/ Douglas J. Kline
Douglas J. Kline – Lead Attorney
(*Admitted Pro hac vice*)
Daniel M. Forman (*Admitted Pro hac vice*)
Jonathan W. Lent (*Admitted Pro hac vice*)
Kenneth E. Radcliffe (*Admitted Pro hac vice*)
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
Email: dkline@goodwinprocter.com
Email: dforman@goodwinprocter.com
Email: jlent@goodwinprocter.com
Email: kradcliffe@goodwinprocter.com

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Brown McCarroll, LLP
1127 Judson Road, Suite 220
Longview, Texas 75601
Telephone: (903) 236-9800
Facsimile: (903) 236-8787
Email: ccapshaw@mailbmc.com
Email: ederieux@mailbmc.com

ATTORNEYS FOR DEFENDANT
NUANCE COMMUNICATIONS, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 9th day of February, 2007, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Douglas J. Kline

LIBA/1764086.1