IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **GTX CORPORATION,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:06 CV 244 |
| | § | PATENT CASE |
| **KOFAX IMAGE PRODUCTS INC., PEGASUS IMAGING CORPORATION, NUANCE COMMUNICATIONS INC., LEAD TECHNOLOGIES INC., EASTMAN KODAK COMPANY, XEROX CORPORATION, and CANON U.S.A., INC.,** | § § § § § § § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the parties' eleven motions for summary judgment and Defendant Canon U.S.A., Inc.'s ("Canon") Renewed Motion for Sanctions. After careful consideration of the parties' oral arguments and written submissions, the Court **GRANTS** Defendant Canon U.S.A., Inc.'s ("Canon") Motion for Summary Judgment of Non-Infringement (Docket No. 371) and Defendant Kofax Inc.'s ("Kofax") Motion for Summary Judgment of Non-Infringement (Docket No. 390).

The Court **DENIES** Plaintiff GTX Corporation's ("GTX") Motion for Summary Judgment of Infringement Against Canon U.S.A., Inc. (Docket No. 383) and GTX's Motion for Summary Judgment of Infringement Against Kofax, Inc. (Docket No. 391) and **DENIES** GTX's Motion for Partial Summary Judgment of No Inequitable Conduct and to Exclude the Testimony of Defendant's Legal Expert (Docket No. 388), GTX's Motion for Partial Summary Judgment of No Anticipation by U.S. Patent No. 5,410,611 (Docket No. 389), and Kofax's Motion for Partial Summary Judgment of Non-Infringement with Respect to VRS 4.1 (Docket No. 387) as **MOOT**.

## BACKGROUND

GTX accuses Defendants of infringing U.S. Patent No. 7,016,536 (the "'536 patent"). More specifically, GTX contends that Defendants infringe independent claims 2 and 20 and dependent claims 5 and 6. The '536 patent involves manipulating scanned documents. The '536 patent claims specific methods for cleaning up scanned images without human intervention. When scanning a document undesired distortion and noise may appear, and the '536 patent's technology provides a method to automatically de-skew and de-speckle the scanned document's content.

The parties submitted their disputed terms and proposed constructions. After a *Markman* hearing, the Court issued an opinion construing all disputed terms. *See* Docket No. 317. The parties filed eleven summary judgment motions; each Defendant moved for summary judgment of non-infringement, and GTX moved for summary judgment of infringement as to all Defendants. Since the summary judgment hearing, Defendant Nuance and GTX have reached a settlement agreement.

## APPLICABLE LAW

**Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue for trial exists, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986).

If the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must assert competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**Infringement Law**

Infringement analysis is "a two-step process in which we first determine the correct claim scope, and then compare the properly construed claim to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1247-48 (Fed. Cir. 1998). Claim construction is an issue of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995). A determination of infringement, whether literal or under the doctrine of equivalents is a question of fact. *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1300 (Fed. Cir. 2001). For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Any deviation from the literal claim language precludes a literal infringement finding. *Telemac Cellular Corp. v. Topp*

*Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001). The essential inquiry under the doctrine of equivalents is whether the accused product or process contains elements identical to or equivalent to each claimed element of a patented invention. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). "Under the doctrine of equivalents, an accused product that does not literally infringe a structural claim may yet be found [infringing] if it performs substantially the same function in substantially the same way to obtain the same result as the claimed product or process." *Hughes Aircraft Co. v. U.S.*, 717 F.2d 1351, 1361 (Fed. Cir. 1983) (internal citations omitted).

## ANALYSIS

**Canon's Motion on Non-Infringement**

GTX accuses the CanoScan LiDE 25, 60, 70, 500F, 600F, 4200F, 4400F, 8400F, 8600F, and 9950F scanners (collectively "CanoScan products") of infringing Claims 2, 5–7, and 20 of the '536 patent.[1] The CanoScan products contain two pieces of software—"Toolbox" and "ScanGear"—relevant to the '536 patent technology. Canon moved for summary judgment contending that its products do not literally infringe as they do not perform steps (d)–(g) of the '536 patent. Canon also claims that its products do not infringe under the doctrine of equivalents.

Literal Infringement

*QARE Algorithm*

Canon claims that the accused ScanGear software's algorithm, QARE, does not perform steps (d)–(g). In its response, GTX fails to address Canon's argument or to offer any analysis on the QARE algorithm.

As the party opposing a summary judgment of non-infringement, GTX had the burden to

---

[1] Both parties agree that Claim 2 and Claim 20 are substantially similar so as not to require a separate analysis for each claim. *Compare* '536 patent, Col. 27:7–38 *with* Col. 30:13–46. Accordingly, the Court will refer to Claim 2 for its analysis, but its analysis applies with equal weight to Claim 20.

4

rebut Canon's arguments and to show that GTX's evidence was not conclusory. *See TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("[T]he party opposing the motion for summary judgment of noninfringement must point to an evidentiary conflict created on the record, at least by a counter-statement of a fact set forth in detail in an affidavit by a knowledgeable affiant."). Accordingly, GTX has not raised a genuine issue of material fact as to the QARE algorithm.

> *pc_noise Algorithm*

Canon also argues that the accused "Toolbox" software's pc_noise algorithm does not literally infringe steps (d)–(g). Steps (d)–(g) require

> (d) performing a second object grabbing operation on the de-skewed first digital representation to create an object list of all object images of the de-skewed first digital representation;
> (e) identifying a portion of the de-skewed first digital representation corresponding to a picture region of the document;
> (f) identifying objects representing essential data images of the document and marking the identified objects as data objects; and
> (g) constructing the cleaned-up digital image of the document by
> > i. combining the objects in the picture region and the marked data objects, and
> > ii. eliminating all objects not marked as data objects to provide a reconstructed digital representation of the essential images without the noise images.

'536 patent, Col. 27:22–38. GTX claims that the pc_noise algorithm literally performs each of the above steps. Throughout its analysis of steps (d)–(g), GTX relies heavily on paragraph 18 of its expert's declaration, which states

> Furthermore, the Canon Products de-noise a document by determining whether or not different sections of a digital representation match one of the predetermined 3x3 patterns of pixels. If one of the patterns is not matched then the image is not changed, if the pattern is matched then the detected noise is removed. The patterns correspond to noise, rather than picture regions or another type of essential data image.

Docket No. 383, Doermann Decl. ¶ 18.

5

**Step (d)**

Step (d) requires performing an object grabbing operation and creating an object list of all object images from the de-skewed digital representation. '536 patent, Col. 27:22–25. GTX argues that the pc_noise algorithm performs an object grab when the products "load the image into memory." Docket No. 396 at 10. GTX cites Doermann's declaration at paragraph 18 for support. However, as shown above, paragraph 18 does not refer to an object grabbing operation; it discusses the pc_noise algorithm's de-noising method.

Paragraph 15 of Doermann's declaration does state that the object grabbing operation is performed when "[the black pixels] are loaded into memory." Docket No. 383, Doermann Decl. ¶ 15. This statement is conclusory and not supported by Doermann's expert report. *See* Docket No. 371, Exh. 4 at 18–19. In fact, the only evidence offered to support this statement is a strained reading of Defendants' validity expert's, Dr. Huttenlocher, report.

GTX claims that Dr. Huttenlocher stated "'object grabbing' is met by 'read[ing] in the input image' into memory." Docket No. 396 at 10. Canon counters that Dr. Huttenlocher's expert report does not state object grabbing is accomplished by simply reading an object into memory. The Court agrees with Canon. Dr. Huttenlocher was comparing a step performed in a prior art patent to step (d) of Claim 2. He never states that step (d) is satisfied by simply loading an object into memory. *See* Docket No. 383, Exh. 6 at 5–6. GTX offers no expert testimony or opinion for reading Huttenlocher's report as stating that step (d) is performed by loading an object into memory. The only support offered by GTX is the attorney argument in its response. GTX cannot survive summary judgment by offering unsupported attorney argument and conclusive expert statements. *See TechSearch*, 286 F.3d at 1372 ("conclusory statements are insufficient."). Accordingly, GTX has

not shown that a genuine issue of fact exists regarding literal infringement of step (d).

**Steps (e)–(g)**

Canon also contends that GTX fails to raise a genuine issue of fact as to steps (e)–(g). The claim language requires identification of picture regions and then identification of objects representing essential data images. Step (g) then requires combining the above identified objects while eliminating all other objects to construct a new digital representation.

GTX argues that the Canon products literally infringe steps (e)–(g) because pc_noise identifies noise, removes that noise, and leaves only essential data. GTX contends that because pc_noise identifies noise what remains must be essential data. Again, GTX cites to paragraph 18 of Doermann's declaration for support, but paragraph 18 does not mention identifying pictures or essential objects; rather it discusses identifying and removing noise. *See* Docket No. 383, Doermann Decl. ¶ 18.

Dr. Doermann's expert report also does not support GTX's literal infringement argument. In the expert report, the step (e) and step (f) analyses are virtually identical. Dr. Doermann states that the pc_noise algorithm is able to go through and distinguish which portions of the document are picture regions, data objects, and noise. Docket No. 371, Exh. 4 at 19–21. Dr. Doermann explains that the pixels identified as noise are removed while the other pixels remain unchanged. *Id*. Although Dr. Doermann describes the same clean-up method for steps (e) and (f), his conclusions vary. For step (e), Dr. Doermann concludes that the method results in detection of a picture region. *Id*. at 20. For step (f), Dr. Doermann concludes that the same method results in detection of data objects. *Id*. at 21. Dr. Doermann does not explain how identifying noise allows the Kofax products to identify picture regions or the other data objects.

7

For step (g), Dr. Doermann states that pc_noise infringes because it removes noise and combines the identified regions "on the fly." *Id*. at 22. As with steps (e) and (f), Doermann states that when a pixel is identified as noise, it is eliminated, thereby creating a new digital image as required by step (g)(ii). *Id*. According to GTX's infringement expert, step (g) is performed as a *de facto* result of the clean-up process and at the same time as steps (e) and (f). *Id*.

Claim 2 requires, *inter alia*, identification of picture regions, followed by identification and marking of data objects, and finally constructing a new image with only the above identified objects. GTX's infringement argument results in combining steps (e)–(g) because it states that after pc_noise eliminates noise, the remaining objects are identified as both picture regions and data objects. Step (g) clearly requires first combining the picture region and marked data objects and then eliminating noise. *See* '536 patent, Col. 27:32–38. As step (g) requires the identification in steps (e) and (f) to be performed first, the pc_noise algorithm cannot literally infringe by first removing noise. *See E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007) ("[B]ecause the language of most of the steps of its method claim refer to the completed results of the prior step, [patentee] must show that all of those steps were performed in order.").

Furthermore, GTX's infringement theory is based on a different method of de-noising. The '536 patent teaches cleaning up a document by identifying essential data objects not by identifying noise. *See* '536 patent, Col 6:62–66 ("[A] feature of the proposed system and method is that they are primarily based on the detection and recognition of essential data objects on the scanned document, rather than on detection of noise features thereon."). Co-inventor, Marvin Ling, conceded that the '536 patent does not contemplate performing steps (e)–(f) by identifying noise. Docket No. 371, Exh. 6 at 437:7–12. ("We don't identify noise. We try to find data."). GTX and its expert

admit that the Canon products search for noise. Thus, the accused Canon products use fundamentally different clean-up methods than the claimed method of the '536 patent. Accordingly, GTX fails to raise a genuine issue of fact as to literal infringement.

Doctrine of Equivalents

Canon argues that GTX's equivalents argument removes claim limitations and that GTX only advances conclusory statements to support its argument. In its response, GTX offers no evidence that Canon infringes any of the claim limitations under the doctrine of equivalents. GTX simply states, "At the very least, the Canon products infringe under the doctrine of equivalents." Docket No. 396 at 15.

It is well settled law that unfounded conclusions will not survive summary judgment. *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1365 (Fed. Cir. 2007) (citing *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)); *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1382–83 (Fed. Cir. 2007). GTX had the burden of providing "particularized testimony and linking argument as to the 'insubstantiality of the differences' . . . with respect to the function, way, result test." *Tex. Instruments, Inc.*, 90 F.3d at 1567.

"The doctrine of equivalents is not a license to ignore claim limitations." *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 398 (Fed. Cir. 1994). "Under the 'all elements' rule, to find infringement, the accused device must contain 'each limitation of the claim, either literally or by an equivalent.'" *TIP Sys., LLC v. Phillips & Brooks/Gladwin Inc.*, ___ F.3d ___, 2008 WL 2437764 at * 14, Nos. 2007-1241, 2007-1279 (Fed. Cir. June 18, 2008) (quoting *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005)). "The party asserting infringement must present 'evidence and argument concerning the doctrine and each of its elements.' The evidence and

9

argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement." *nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006) (quoting *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989)).

GTX provides no evidence to rebut Canon's argument that GTX's infringement theory vitiates certain claim limitations. Instead, GTX merely states that the Canon products literally infringe, but if they do not literally infringe then they infringe by equivalents. Furthermore, GTX's expert report illustrates that GTX's equivalents argument is subsumed in its literal infringement argument for steps (e)–(g). *See* Docket No. 371, Exh. 4 at 19–21. Accordingly, GTX has not created a genuine issue of material fact with regard to infringement by equivalents.

Dependent Claims 5 and 7

Dependant Claims 5 and 7 depend on Claim 2 and refer to the de-skewing method in step (c). *See* '536 patent, Cols. 27:65–67; 28:3–6. As Canon does not infringe literally or by equivalents with regards to steps (d)–(e), the Canon products cannot infringe dependent Claims 5 or 7. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.").

**Kofax's Motion on Non-Infringement**

GTX accuses Kofax's VRS 4.0, VRS 4.1, AIPE 4.0, AIPE 4.1, and Adrenaline 650i software products (collectively "Kofax products") of infringing Claims 2, 5–7, and 20 of the '536 patent. Kofax moved for summary judgment contending that its products do not perform steps (b), (d) or

(e)–(g) of Claims 2 and 20.[2]

Steps (b) and (d)

Step (b) requires "performing a first object grabbing operation on the first digital representation to identify all object images thereof." '536 patent, Col. 27:13–15. Step (d) requires "performing a second object grabbing operation on the de-skewed first digital representation to create an object list of all object images of the de-skewed first digital representation." *Id.*, Col. 27:22–25. Kofax claims that its products do not perform steps (b) or (d). Kofax also contends that GTX fails to create a genuine issue of fact that the Kofax products infringe by performing a process equivalent to steps (b) and (d).

*Literal Infringement*

Kofax argues that based on the Court's claim construction, GTX has presented no evidence that the Kofax products actually perform an object grabbing operation or identify all objects on an image. The Court construed "object grabbing operation" to mean "generating a compilation of the pixel array data for the object images."

GTX argues that the Kofax products perform an object grabbing operation when the algorithm loads a document into memory. GTX's expert states:

> The Kofax Accused Products meet the claim language and perform an object grabbing operation, as defined by the court, on a digital representation when a document is scanned and loaded into memory as a pixel array data structure. Furthermore, the pixel array data structure contains all of the pixel data of the document, including any and all data for bodies of dark pixels surrounded by white pixels. These bodies of black pixels are "grabbed" when they are loaded into memory for processing.

---

[2] Although GTX does not dispute the similarities of Claims 2 and 20 in its other motions and responses, GTX contends Kofax has only provided an analysis of Claim 2 and not Claim 20. As GTX concedes this fact in other briefing, the Court will refer to Claim 2 for its analysis, but its analysis applies with equal weight to Claim 20.

Docket No. 391, Doermann Decl. ¶ 12. The above statements are entirely conclusory. Dr. Doermann does not explain how loading the document into memory generates a "compilation of the pixel array data for the object images." His expert report also fails to explain his conclusion. In his report, Dr. Doermann stated that "[b]y identifying and analyzing run length data, the [Kofax products] can operate to perform an object grabbing operation." Docket No. 405, Exh. 2 at ¶ 27. The report does not state that performing an object grab is accomplished by simply loading documents into memory. *See id*.

As with the Canon products, GTX claims that Defendants' invalidity expert, Dr. Huttenlocher, confirms Doermann's conclusions. Again, GTX only offers attorney argument to support its claim. As discussed above, Dr. Huttenlocher did not make the broad assertion that by loading a document into memory a product performs an object grabbing operation. *See* Canon Motion, Literal Infringement, Step (d) *supra*. Notwithstanding GTX's conclusory evidence, the Court's construction concerns object images within the scanned document and the not the scanned document as a whole; thus, merely scanning a document into memory would not be an "object grabbing operation" as construed by this Court.

Step (d) also requires the creation of on "object list." The Court construed "object list" to mean "a list data structure." While GTX cites to Doermann's declaration at paragraph 11 to show that the Kofax modules create an object list, neither "object list" nor "list data structure" is mentioned in that paragraph or anywhere else in Doermann's declaration. *See* Docket No. 391, Doermann Decl. ¶¶ 11–12.

Furthermore, Dr. Doermann's expert report is entirely conclusory with respect to creating an "object list." After discussing the alleged object grabbing operation, Dr. Doermann concludes, "A

list of objects is necessarily created as a result of these filtering processes." Docket No. 405, Exh. 2 ¶ 27(iii). Dr. Doermann does not offer any evidence or testimony to explain why or how an object list is necessarily created. These conclusory statements are not enough to create a fact issue on the literal infringement of step (d). *See Stumbo*, 508 F.3d at 1365.

GTX cannot survive summary judgment by offering unsupported attorney argument and conclusive expert statements. *See TechSearch*, 286 F.3d at 1372 ("conclusory statements are insufficient"). Accordingly, there is no fact issue regarding the Kofax products' literal infringement of steps (b) and (d).

### *Doctrine of Equivalents*

Kofax argues that prosecution history estoppel precludes GTX from asserting the doctrine of equivalents as to the above steps and, alternatively, GTX fails to create a fact issue regarding equivalents.

Prosecution history estoppel bars an equivalents argument for subject matter relinquished during prosecution. *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006). Kofax contends that the inventors of the '536 patent repeatedly distinguished the differences between "objects" and "slices" thereby precluding GTX from arguing that analyzing slices is equivalent to analyzing objects. GTX does not dispute that the inventors distinguished "slices" from "objects," rather it argues that because the '536 patent claims were not amended, prosecution history estoppel does not apply.

It is well settled that prosecution history estoppel does not require amendment of claims. *Id*. Estoppel can also occur by "surrendering claim scope through argument to the patent examiner ('argument-based estoppel')." *Id*. Kofax presents ample evidence that in an effort to overcome prior

13

art, the '536 patent inventors argued to the examiner that "slices" and "objects" are different. Docket No. 390 at 12.[3] GTX does not dispute this evidence in its response. Thus, argument-based estoppel precludes arguing "slices" are equivalent to "objects."

Kofax's expert, Dr. Suri, states that the Kofax products "sample small slices of an image." Docket No. 390, Suri Decl. at ¶ 2; *see also* Docket No. 405, Exh. 5 at 6. While GTX's expert refers to this process as "probing," GTX does not offer any evidence to rebut Dr. Suri's opinion that probing is the same as sampling slices of images. Accordingly, as Kofax products sample slices of images, GTX is precluded from arguing that the Kofax products perform a process equivalent to the object grabbing claimed in steps (b) and (d).

Notwithstanding the above, GTX's evidence of infringement by equivalents is insufficient. Dr. Doermann's report simply restates the "function-way-result" test without offering any supporting facts or analysis. *See* Docket No. 405, Exh. 1 ¶¶ 27(v), 31(iv). It is well settled law that unfounded conclusions will not survive summary judgment. *Stumbo*, 508 F.3d at 1365 (citing *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)); *Motionless Keyboard Co*, 486 F.3d at 1382–83 (Fed. Cir. 2007). GTX had the burden of providing "particularized testimony and linking argument as to the 'insubstantiality of the differences' . . . with respect to the function, way, result test." *Tex. Instruments, Inc.*, 90 F.3d at 1567. Dr. Doermann's report fails to raise a genuine issue of fact as it is a "conclusory expert statement devoid of facts upon which the conclusions were reached." *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 482 F. Supp. 2d. 1045, 1061–62 (N.D. Ind. 2007), aff'd, No. 2007-1358, 260 Fed. Appx. 297 (Fed. Cir. January 10, 2008). GTX has not carried its burden; accordingly, there is no issue of fact on whether the

---

[3] The Court also discussed this issue in its claim construction opinion. *See* Docket No. 317 at 6–7.

Kofax products infringe steps (b) or (d) by equivalents.

Steps (e)–(g)

Kofax further contends that it does not infringe the '536 patent as its products do not de-noise a document using the same method described in steps (e)–(g) of claim 2. Steps (e)–(g) require

> (e) identifying a portion of the de-skewed first digital representation corresponding to a picture region of the document;
> (f) identifying objects representing essential data images of the document and marking the identified objects as data objects; and
> (g) constructing the cleaned-up digital image of the document by
> > i. combining the objects in the picture region and the marked data objects, and
> > ii. eliminating all objects not marked as data objects to provide a reconstructed digital representation of the essential images without the noise images.

'536 patent, Col. 27:26–38.

*Literal Infringement*

GTX argues that the Kofax products literally perform steps (e)–(g). GTX claims that "the denoise algorithms in the Kofax Accused Products operate by removing everything that is noise, and thereby marking the remaining objects as essential." Docket No. 405 at 11.

As with the Canon products, GTX's theory of infringement combines steps (e)–(g). Step (g) requires first combining the picture region and marked data objects and then eliminating noise. '536 patent, Col. 27:32–38. Logically, to combine the picture region and marked data objects, those objects must be identified first. As step (g) requires the identification in steps (e) and (f) to be performed first, the Kofax products cannot literally infringe by first removing noise—Step (g)(ii)—and then identifying the picture region and other data objects—Steps (e)–(f). *See E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007) ("[B]ecause the language of most of the steps of its method claim refer to the completed results of the prior step, [patentee] must show

15

that all of those steps were performed in order.").

### *Doctrine of Equivalents*

Kofax argues that GTX's theory of infringement improperly vitiates claim steps (e)–(g). GTX contends that its has shown that Kofax infringes all elements of the asserted claims. Citing Dr. Doermann's expert report, GTX claims that it applies the doctrine of equivalents to each specific element; thus, it does not vitiate claim limitations.

While explaining its infringement theory, GTX stated that "the denoise algorithms in the Kofax Accused Products operate by removing everything that is noise, and thereby marking the remaining objects as essential." Under GTX's theory, steps (e), (f), and (g) are essentially combined into one step, which is the result of removing noise. The asserted claims require separate steps of identifying picture regions, identifying other data objects, and combing those objects to create a new digital representation without noise. Thus, as GTX's theory relies on first removing noise, it improperly vitiates several claim steps, specifically steps (e), (f), and (g)(i). *See K-2 Corp. v. Salomon*, 191 F.3d 1356, 1367 (Fed. Cir. 1999) ("the doctrine of equivalents cannot be used to vitiate an element from the claim in its entirety").

Furthermore, GTX had the burden of providing "particularized testimony and linking argument as to the 'insubstantiality of the differences' . . . with respect to the function, way, result test." *Tex. Instruments, Inc.*, 90 F.3d at 1567. The only evidence offered to show equivalents is a general citation to Dr. Doermann's report, which offers an equivalents analysis for each claim element. *See* Docket No. 405, Exh. 1. As with steps (b) and (d), Dr. Doermann's report simply restates the "function-way-result" test without offering any supporting facts or analysis. *See* Docket No. 405, Exh. 1 ¶¶ 33(iv), 35(iv), 37 (iv–v). GTX had the burden of providing "particularized

16

testimony and linking argument as to the 'insubstantiality of the differences' . . . with respect to the function, way, result test." *Tex. Instruments, Inc.*, 90 F.3d at 1567. Dr. Doermann's report fails to raise a genuine issue of fact as it is a "conclusory expert statement devoid of facts upon which the conclusions were reached." *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 482 F. Supp. 2d. at 1061–62.

<u>Dependent Claims 5 and 7</u>

Dependant Claims 5 and 7 depend on Claim 2 and refer to the de-skewing method in step (c). *See* '536 patent, Cols. 27:65–67; 28:3–6. As Kofax does not infringe literally or by equivalents with regards to steps (b) or (d)-(e), the Canon products cannot infringe dependent Claims 5 or 7. *See Wahpeton Canvas Co.*, 870 F.2d at 1552 n.9 ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.").

**Kofax's Motion on Non-Infringement as to VRS 4.1**

As discussed above, the alleged Kofax products do not infringe the '536 patent. Thus, it is unnecessary to address this specific product. Accordingly, the Court **DENIES** Kofax's motion (Docket No. 387) as **MOOT**.

**GTX's Motion on Anticipation**

GTX's motion would require the Court to examine multiple patents and expert reports. As the Court's rulings on non-infringement resolve this case in its entirety, it is unnecessary for the Court to expend its resources on this motion. Accordingly, the Court **DENIES** GTX's motion as **MOOT**.

**GTX's Motion on Inequitable Conduct and to Strike Defendant's Expert**

For the same reasons as stated above for GTX's motion on anticipation, it is unnecessary for

the Court to expend its resources on this motion. Accordingly, the Court **DENIES** GTX's motion as **MOOT**.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Canon's motion for summary judgment (Docket No. 371) and Kofax's motion for summary judgment (Docket No. 390) and **DENIES** all other motions.

**So ORDERED and SIGNED this 9th day of July, 2008.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**